[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case came to this court as a court trial. Plaintiff, Qiana Jones was thirteen years of age and a student at Stamford Public Schools in the Eighth Grade at Turn of River Junior High School on September 5, 1997. At approximately 7:45 a.m. on that date, she was waiting at the corner of Myano Lane and Connecticut Avenue, public highways in the City of Stamford, for her school bus to take her to school. At that time and place the defendant, Jean E. Lartigue was operating the school bus owned by Laidlaw International a/k/a Laidlaw Transit, Inc. in a generally northerly direction on Myano Lane and brought the school bus to a stop. As the plaintiff attempted to board the bus the defendant Lartigue carelessly and negligently moved the bus, rolling it forward and stopping on the plaintiff's left foot, causing injuries to the foot.
The case came to this court as a hearings in damages as liability was admitted.
Doctor Avi Weiner of Stamford, Connecticut testified that he initially saw the plaintiff on September 5, 1997 at Stamford Hospital. Thereafter, she was seen in his office on September 8, 1997, September 17, 1997, October 15, 1997, November 12, 1997, January 14, 1998 and September 23, 1998. The initial course of treatment was bed-rest and leg elevation. Upon examination, the left foot was found to be extremely swollen with an abrasion in the Achilles tendon area of the skin, about 2-4 inches in diameter.
A repeat X-ray showed a chip fracture of the calcaneouboid joint as well as the talonavicular joint and a slight mal-alignment of these two joints (chopart joint) was noted.
After the abrasion was healed, she was casted. She was instructed to continue ambulation with crutches and not to bear weight and to return for follow-up.
On October 15, the cast was removed and a new weight bearing cast was applied. On November 12, her cast was repaired and fill ambulation and CT Page 6441 weight bearing were encouraged. On December 17, three months after the accident, the cast was removed and the plaintiff was instructed to engage in a range of motion with the ankle and ambulate in a regular shoe with an arch support. In January of 1998, and in May, she was still complaining of tenderness over the sole part of the foot. Despite that problem, she was encouraged to start sports activity and to resume normal exercise and return to the office if the pain persisted.
She was last seen on September 23, 1998, a year after the accident. At that visit, she complained of a one-inch in diameter loss of sensation in the ankle near the Achilles tendon and pain in the mid-foot while running and doing sports activities. Stress tests revealed some cracking around the mid-foot associated with pain. The final diagnosis was a severe crush. injury to the mid-foot with subluxation of the calcaneocuboid joint associated with chip fractures, which represent a severe sprain and a severe injury to the chopart joint of the mid-foot due to the injury. Dr. Weiner found it likely that she would develop severe arthritic pain to the joint over years which might require mid-foot fusion to alleviate the symptoms. At this evaluation she was given a 25% disability of the foot due to the accident which was the sole cause of the injury.
Qiana Jones testified concerning the pain and the inconvenience following the accident. She described the pain as "throbbing." The foot was discolored, swollen and bruised. She remained on the couch during the early part of the recovery and was unable to shower and was relegated to washing in the sink. Before the accident she played tag, jump rope, kick ball, and rode bikes. She had been on the drill team, which required rhythm with feet and hands. After the accident, she was unable to engage in these activities at the same level as before. She could no longer take a long run or walk, stand for along time, jog more than two blocks, or stand for 10 minutes before shifting side-to-side. She found it too hard to stand as a cashier at Bongiorno's. She must plan her day when wearing high heels. She testified that she can wear any shoe but pays the price. It was a year before she was able to get back on the school bus again. She has a life expectancy of 58.4 years.
Her mother testified that prior to the incident she was a healthy child. As a result of the accident her daughter suffered extreme pain for which she was given strong medication at the hospital. At home, she was forced to remain downstairs with her daughter during her recovery because she wouldn't use a bedpan. She couldn't take the pain medication before school. She can't wear heels and she loves to dance. She wants nice shoes to go with her prom dress. Her choice of colleges has been narrowed to a small school which would require less walking.
This is a serious injury for a woman to have for the rest of her life. CT Page 6442 A substantial part of her youth was affected by the injuries she sustained in that there were activities she was not able to do and participate in. The future will be a painful one for her with a 25% disability of the left foot.
Part Seven (A) of the Complaint was admitted.
The court finds as follows:
1. Past economic damages, zero (paid by medical insurance).
 2. Past non-economic damages from the day of the accident until the time of trial, $60,000.
 3. Future economic damages based on the doctor's testimony of the cost of the future surgery at present value, $5,000.
4. Future non-economic damages, $160,000.
Total damages, $225,000.
Expert witness fee for Dr. Weiner of $3,000 awarded as costs to prevailing party as fair and reasonable compensation.
KARAZIN, J.